UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INDIANA AUTOBODY ASSOCIATION,
INC., et al.,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.

Case No: 6:14-cv-6001-Orl-31TBS
MDL Case No: 6:14-md-2557-GAP-TBS

## REPORT AND RECOMMENDATION

Pending before me, on referral from the presiding district judge, are Defendants' motions to dismiss (Docs. 131-135). Upon due consideration, I respectfully recommend that the motions be **GRANTED** and that Plaintiffs' First Amended Complaint be **DISMISSED without prejudice**, with leave to amend.

### I. Background

Plaintiffs are 25 Indiana auto body repair shops and a not-for-profit trade organization that represents Indiana businesses engaged in the collision repair of automobiles (Doc. 123 at ¶¶ 5-31). Defendants are 26 insurance companies that write automobile insurance in the state of Indiana (Id., ¶¶ 32-58). Plaintiffs allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (Id., ¶¶ 153-172). They also assert claims for damages based upon quantum meruit, tortious interference with contractual relationships, and tortious interference with business relationships (Id., ¶¶ 126-152). The allegations in this case are similar to the allegations made by the plaintiffs in A&E Auto Body, Inc. v. 21st Century

Centennial Insurance Co., No. 6:14-cv-00310-Orl-31TBS, which the Court summarized in its Order granting the motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer. In exchange, the repair shop is listed as a "preferred provider". However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.
>
> As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area, determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate." However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops. If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.
>
> The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor." The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.
>
> The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where

- 2 -

> new parts were available.   The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they have imposed arbitrary caps on the amount they are willing to pay for paint as part of a repair.

2015 WL 304048, at *1-2 (M.D. Fla. Jan. 21, 2015).

Plaintiffs filed this lawsuit in the United States District Court for the Southern District of Indiana on April 2, 2014 (Doc. 1).   On August 12, 2014, the United States Judicial Panel on Multidistrict Litigation transferred the case to this district for coordinated or consolidated pretrial proceedings before District Judge Gregory A. Presnell.   In re Auto Body Shop Antitrust Litigation, __ F. Supp. 3d. __, 2014 WL 3908000 (J.P.M.L. Aug. 8, 2014).   Six days later, Plaintiffs filed their First Amended Complaint (Doc. 123).

Defendants moved to dismiss the First Amended Complaint and on November 14, 2014, the Court held a hearing on the motions to dismiss in this and six other related cases (Case No. 6:14-cv-310, Doc. 282).   On January 21, 2015, the Court entered its Order dismissing the amended complaint in the Florida case.   A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-Orl-31TBS, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015).   On February 25, Judge Presnell referred the pending motions to dismiss in this case to me for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41,

Case 6:14-cv-06001-GAP-TBS   Document 145   Filed 02/25/15   Page 4 of 13 PageID 1068

47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milbum v. United States, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988). The court must also limit its consideration to the pleadings and any exhibits attached to the pleadings. FED.R.CIV.P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide enough factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED.R.CIV.P. 8(a) (2)).

III. Discussion

Count I: Quantum Meruit

Indiana recognizes a cause of action based upon a constructive contract, also known as quantum meruit. Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991) ("Plaintiffs' sole common law claim is unjust enrichment, also referred to as quantum meruit, contract implied-in-law, constructive contract, or quasi contract."); Coleman v. Coleman, 949 N.E.2d 860, 866 (Ind. App. 2011) ("In Indiana, unjust enrichment is a label given to so-called 'constructive contracts,' which are not actually contracts at all; such 'contracts' are also called quantum meruit, contracts implied-in-law, or quasi contracts.").

The elements of a cause of action for quantum meruit under Indiana law are "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." Woodruff v. Indiana Family & Social Services Admin., 964 N.E.2d 784, 791 (Ind. 2012).  In cases where the plaintiff cannot prove the defendant expressly or impliedly requested the benefit, the first element can be satisfied by a showing "that provision of the benefit was necessary to protect the interests of the defendant or another." Coleman., 949 N.E.2d at 868.

"Indiana appellate courts have uniformly held that 'the existence of a valid express contract for services ... precludes implication of a contract covering the same subject matter.  The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit.'" Industrial Dredging & Engineering Corp. v. Southern Indiana Gas & Electric Co., 840 F.2d 523, 525 (7th Cir. 1988) (quoting Kincaid v. Lazar, 405 N.E.2d 615, 619 (Ind. App. 1980))

(alterations in original).   Defendants argue that Plaintiffs' quantum meruit claim must be dismissed because Plaintiffs have alleged the existence of valid, express contracts between themselves and Defendants.   Plaintiffs categorically deny this assertion.   They maintain that "[b]eyond the use of 'program agreements' and industry jargon, such as DRPs, Plaintiffs *never* assert the existence of a contract, let alone a valid and enforceable contract.   Indeed, the only contracts mentioned in the [First Amended Complaint] are those between the Plaintiffs and consumers who have their vehicles repaired by Plaintiffs."   (Doc. 136 at 16).

The First Amended Complaint alleges:

> 64.   One method by which the Defendants exert control over Plaintiffs' businesses is by entering "program agreements" with each individual Plaintiffs [sic] and other body shops that are similarly situated.   Although each Defendant's program agreements have unique titles, such agreements are known generally and generically within the collision repair industry as Direct Repair Program agreements ("DRPs").
>
> 65.   DRP's were presented and characterized by the Defendants to the Plaintiffs as a mutually beneficial opportunity.   In exchange for providing certain concessions of price, priority and similar matters, the individual Defendant would list the body shop as a "preferred provider."
>
> 66.   However, the concessions demanded by the Insurers in exchange for remaining on the Direct Repair Program were not balanced by the purported benefits.   The Defendants, particularly State Farm, have utilized the DRP's to exert control over the Shops in a variety of manners, and well beyond the constraints imposed by an ordinary business agreement.[1]
>
> * * *
>
> 73.   Generally, each DRP usually contains a statement to the effect that the body shop will charge the respective insurance company no more for any particular repair than the

---

[1] "Insurers" are defined as "[t]he insurance companies," and "Shops" are defined as "[t]he body shops (Doc. 123, ¶ 1).

> going rate in the market area (also referred to as the "Market Rate").

In the First Amended Complaint, whenever Plaintiffs use the term "Defendants" they mean "each and every Defendant as if they had been individually named" (Doc. 123 at 2).  Based upon these averments, I conclude that the First Amended Complaint does allege that Plaintiffs have entered into contracts with the Defendants and therefore, as pled, Plaintiffs' quantum meruit claim must be dismissed.

Even if I looked past Plaintiffs' use of group pleading and accepted that not all Plaintiffs have DRPs with all Defendants, I would still recommend dismissal of Count I. Under Indiana law, someone who provides work without a reasonable expectation of payment cannot recover in quantum meruit, see Woodruff, 964 N.E.2d at 792 (affirming judgment for defendant on quantum meruit claim because the plaintiff "could not, under any level of reasonableness, have expected payment from [the defendant] once it had been decertified"), and Plaintiffs have pled facts showing that any expectation of payment they had was unreasonable.   Like the Mississippi case, see Capitol Body Shop, Inc. v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6000, Doc. 82 at 9 (M.D. Fla. Feb. 9, 2015) (report and recommendation on motions to dismiss), the First Amended Complaint case alleges that Defendants told Plaintiffs what they would pay for repairs (Doc. 123, ¶¶ 66, 73, 75–80).   And, in their memorandum in opposition to the motions to dismiss, Plaintiffs argue that every Defendant "enforced" "the terms of the DRPs" against every Plaintiff, whether or not there was a DRP between the particular Plaintiff and Defendant (Doc. 136 at 3).   Here, as in the Mississippi case, "Defendants' repeated and persistent refusal to pay the amounts demanded by Plaintiffs makes unreasonable any expectation

- 7 -

on the part of Plaintiffs that Defendants would abruptly begin paying the amounts Plaintiffs believe their services are worth." See Capitol Body Shop, Doc. 82 at 10.

Finally, some Defendants argue, relying largely on case law from Florida, that Plaintiffs have failed to allege any benefit that they conferred on Defendants. (See Doc. 132 at 21; Doc. 135 at 17-18). Plaintiffs do not address this argument in their response. Given Plaintiffs' failure to rebut Defendants' argument, I recommend dismissal on this basis as well.

Counts II: Tortious Interference with Contractual Relationship

To establish a right to relief for tortious interference with contractual relationship under Indiana law, a plaintiff must show "(i) the existence of a valid and enforceable contract; (ii) defendant's knowledge of the existence of the contract; (iii) defendant's intentional inducement of breach of the contract; (iv) the absence of justification; and (v) damages resulting from defendant's wrongful inducement of the breach." Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1235 (Ind. 1994).

Plaintiffs' tortious interference claim fails because they did not "plead sufficient factual matter to show that" any Defendant caused any insured or claimant to fail to perform a contractual duty owed to any Plaintiff. Iqbal, 556 U.S. at 677. Plaintiffs only generally allege the existence of contracts between themselves and Defendants' insureds. (See Doc. 123, ¶ 62 ("Each Plaintiff has done business ... with at least one Defendant's policyholders and claimants by providing to them motor vehicle collision repair services."); ¶ 139 ("Multiple contractual relationships exist, or have existed, between Plaintiffs and consumers...")). Plaintiffs fail to specify any contractual duty or any other duty owed to them by an insured. Assuming these generalized allegations about the existence of contracts can support a claim for tortious interference, Plaintiffs

have still not pled facts showing that any insured failed to perform any of these contracts. Instead, Plaintiffs complain repeatedly that Defendants–not the insureds–have a duty to pay for repairs, and that Defendants–not the insureds–have breached their duty to make those payments.   (See Doc. 123, ¶ 62 ("Defendant Insurers are generally individually responsible for payment of those repairs...."); ¶ 71 ("[T]he vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs."); ¶ 103 ("The Defendants refuse to pay and/or pay in full for a large number of [necessary repairs]."); ¶ 111 ("State Farm has failed to perform as promised.... [Defendants] have continued to refuse to make payment and/or full payment for necessary and proper repairs.")).   Because Plaintiffs have not alleged that any third party failed to perform a contractual duty owed to a Plaintiff, they cannot "show" that Defendants induced any breach or nonperformance, and thus cannot plausibly plead a claim for tortious interference with contract.   Accordingly, I recommend that the Court dismiss Count II without prejudice.

### Count III: Tortious Interference with Business Relationship

Indiana courts recognize a cause of action in tort for interference with business relationship where the defendant wrongfully prevents the plaintiff and a third party from forming a contract, rather than performing an existing contract.   The elements of the tort are similar to the elements of tortious interference with contract, with two differences: tortious interference with business relationship requires only a "valid business relationship" rather than a valid and enforceable contract, but it also requires illegal conduct by the defendant.   Melton v. Ousley, 925 N.E.2d 430, 440 n. 9 (Ind. App. 2010). Thus, to prevail, the plaintiff must demonstrate (1) the existence of a "valid business relationship"; (2) of which the defendant knew; (3) in which the defendant intentionally

and illegally interfered; (4) without justification[2]; and (5) damage to the plaintiff resulting from the defendant's interference.   <u>Economation, Inc. v. Automated Conveyor Systems, Inc.</u> 694 F. Supp. 553, 556 (S.D. Ind. 1988) (citing <u>Flintridge Station Associates v. American Fletcher Mortgage Co.</u>, 761 F.2d 434, 440-41 (7th Cir. 1985)).

In <u>A & E Auto Body</u>, the Court dismissed the plaintiffs' tortious interference claims on the grounds that the generalized allegations in that case that defendants interfered with plaintiffs' customer base in general simply could not support a tortious interference claim under Florida law:

> [W]hile a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers, no cause of action exists for tortious interference with a business's relationship to the community at large.   <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So.2d 812, 815 (Fla.1994).   "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."   <u>Id.</u>   The Amended Complaint cannot plausibly be read to allege that the individuals to whom the Defendants made their misrepresentations about poor quality work and the like had actual or identifiable understandings or agreements with one or more of the Plaintiffs that likely would have been completed but for those misrepresentations.   So far as the Amended Complaint discloses, the insureds to whom the Defendants made misrepresentations never had any contact with the repair shop that was being disparaged, much less an "actual and identifiable understanding or agreement."   <u>See, e.g.</u>, <u>Sarkis v. Pafford Oil Co.</u>, 697 So.2d 524, 526 (Fla. 1st DCA 1997) (affirming dismissal with prejudice of tortious interference claim for failure to identify the customers who were the subject of the alleged interference).

2015 WL 304048, at *8.

---

[2] It is not clear what independent significance this element adds given the requirement of illegal conduct.   <u>Cf.</u> <u>Winkler</u>, 638 N.E.2d at 1236 (arguably implying that illegal acts cannot be justified in tortious interference cases (citing <u>Bochnowski v. Peoples</u>, 571 N.E.2d 282, 275 (Ind. 1991); <u>Miller v. Ortman</u>, 136 N.E.2d 17 (Ind. 1956))).

In the Mississippi case, I declined to recommend dismissal on this basis because Mississippi law does not require "but for" causation at the individual customer level. Capitol Body Shop, Doc. 82, at 14 n. 4 (citing MBF Corp. v. Century Business Communications, Inc., 663 So. 2d 595, 600 (Miss. 1995)).   While Indiana courts have not directly considered whether a cause of action for tortious interference lies for interference in a plaintiff's relationship with "its customer base," MBF Corp., 663 So. 2d at 600, I am fairly confident they would not.   Indiana law, like Florida law, defines the elements of tortious interference with business relationships in terms of specific, individual relationships between the plaintiff and third parties in which the defendant interferes. Compare Economation, Inc., 694 F. Supp. at 556; with Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985) ("Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.").   Mississippi cases, by contrast, cast the elements of the tort much more generally.   See, e.g., Biglane v. Under the Hill Corp., 949 So. 2d 9, 16 (Miss. 2007) (elements of tortious interference are (1) intentional and willful acts, (2) calculated to cause damage to plaintiffs in lawful business, (3) malice, and (4) actual damage and loss as a result).

Moreover, Indiana courts have applied the requirement of a "valid business relationship" to limit relief to plaintiffs who can demonstrate a sufficiently well-defined expectation that a contract would be created before the defendant interfered.   For example, in Comfax Corp. v. North American Van Lines, Inc., 587 N.E.2d 118 (Ind. App.

1992), an Indiana appellate court upheld a grant of summary judgment for a counter-defendant on a tortious interference claim because the counter-plaintiff "failed to show that [it] had a valid business relationship with a third party with which [the counter-defendant] interfered." Id. at 124.   The court emphasized that a valid business relationship required more than "bald assertions of possible business opportunities." Id.   See also Government Payment Service, Inc. v. Ace Bail Bonds, 854 N.E.2d 1205, 1209-10 (Ind. App. 2006) (finding no business relationship between bail agents and local governments); Computers Unlimited, Inc. v. Midwest Data Systems, 657 N.E.2d 165, 168-69 (Ind. App. 1995) (finding no business relationship as a matter of law where contract between plaintiff and third party had terminated and there was no reason to believe that continued negotiations to resolve disputes arising from expired contract "constituted a continuance of the business relationship").

Here, Plaintiffs' First Amended Complaint offers little more than "bald assertions of possible business opportunities" in the form of return visits from past customers.   Comfax Corp., 587 N.E.2d at 124.   This is not enough to show the existence of the "valid business relationship" necessary to support a claim for tortious interference with a business relationship under Indiana law.   Accordingly, I recommend that Count III be dismissed without prejudice.[3]

Counts IV and V: Federal Antitrust Claims

Plaintiffs' antitrust claims are indistinguishable from the claims asserted by the plaintiffs in A&E Auto Body.   On January 21, 2015, the Court dismissed those claims without prejudice, with leave to amend.   A&E Auto Body, 2015 WL 304048, at *9-12

---

[3] In the Mississippi case, I recommended dismissal of a similar claim because Plaintiffs' use of group pleading rendered the complaint implausible.   Capitol Body Shop, Doc. 82 at 12-14.   The same rationale supports dismissal of Count III in this case.

(M.D. Fla. Jan. 21, 2015).  Because the Court's reasoning in A&E Auto Body applies to Plaintiffs' First Amended Complaint in this case, I recommend that Counts VII and VIII be dismissed without prejudice, for the reasons stated in the dismissal order in A&E Auto Body.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that Defendants' Motions to Dismiss be **GRANTED** and that Plaintiffs' First Amended Complaint be **DISMISSED without prejudice**, with 21 days leave to amend.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 25, 2015.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record