## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**INDIANA AUTOBODY ASSOCIATION,**
      **INC., ET AL**                                       **PLAINTIFFS**

**vs.**                                 **CASE NO. 6:14-CV-6001-Orl-31TBS**
                                      **MDL CASE NO. 6:15-MD-2557-GAP-TBS**

**STATE FARM MUTUAL AUTOMOBILE**
      **INSURANCE COMPANY, ET AL**                        **DEFENDANTS**

---

## PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION [DOC. NO. 175]

---

COME NOW, the Plaintiffs in the above captioned cause and submit this, their Objection to the Magistrate's Report and Recommendation, Doc. No. 145, and state the following to the Court:

## **TORTIOUS INTERFERENCE**

The Report and Recommendation recommends dismissing Plaintiffs' tortious interference claim on two grounds: (1) Plaintiffs failed to sufficiently identify the statutory violation supporting their claim, and (2) Plaintiffs failed to set forth facts showing the existence of valid business relationships with which the Defendants interfered.

    1.    <u>The Report and Recommendation erred in finding Plaintiffs failed to sufficiently identify the statutory violation Defendants have violated.</u>

The Report alleged that because the statutory provision at issue contained over forty subparts, it was "impossible for the reader to know what unlawful conduct Defendants engaged in." This factual determination is contradicted by the clear language of the amended complaint.

The amended complaint reads:

        481.    Additionally, Defendants behavior described above violates Indiana Code 27-4-1, et seq., in particular the following provision:

Sec. 3.  No person shall engaged in this state in any trade practice which is defined in this chapter or determined pursuant to this chapter as an unfair method of competition or as an unfair or deceptive act or practice in the business of insurance as defined in IC 27-1-2-3.

482.   Indiana Code provides examples of unfair methods of competition, and unfair or deceptive acts or practices in the business of insurance, including, but not limited to, the following:

**483.   Sec. 4. (a)(1)(E)(16) Committing or performing, with such frequency as to indicate a general practice, unfair claim settlement practices (as defined in section 4.5 of this chapter).**

484.   Unfair claims settlement practices include but are not limited to misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;  refusing to pay claims without conducting a reasonable investigation based upon all available information;  not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; attempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application.  I.C. § 27-4-1-4.5.

485.   The Defendants have violated by their intentional conduct described above the unfair methods of competition, unfair or deceptive acts or practices, and/or unfair claims settlement practices.  Defendants have required Plaintiffs to omit necessary operations and procedures to return vehicles to their pre-accident condition, utilize substandard, dangerous or otherwise inferior replacement parts, and other acts described above, all in violation of applicable Indiana statute.  Defendants acted in violation of law so as to avoid their respective obligations to make payment for full and complete repairs to the vehicles of their respective insureds and claimants.

Emphasis added.

The majority of Indiana law on the tort of tortious interference is dedicated to what does or does not constitute an illegal act for purposes of this tort.  While no bright light rule exists, it is clear that violation of a statute <u>does</u> constitute an illegal act for purposes of tortious interference. *Newland N. Am. Foods, Inc. v. Zentis N. Am. Operating, LLC*, No. 2:13-CV-074, 2013 WL 1870652, at *4

(N.D. Ind. May 3, 2013), *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641-42 (7th Cir. 1999), *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 93 (Ind. Ct. App. 2009)

Contrary to the Recommendation's finding, the amended complaint specifically identifies the statutory provisions which constitute Defendants' violation of law down to the relevant sub-subparts, provides the statutory examples of unfair trade practices set forth in the statute, provides a description of the actions taken by Defendants which constitute unfair trade practices and affirmatively asserts Defendants' actions are in violation of the specified statute.  The Report's conclusions are therefore directly contradicted by the facts and allegations of the amended complaint.

2. Indiana law recognizes the valid business relationship described in the amended complaint

As the Report and Recommendation recognized, one of the elements of a claim for tortious interference with business relations is the existence of a valid business relationship.  Indiana law has not defined "valid business relationship."  It has, however, addressed some of its parameters, such as when a business relationship commences.

The most illustrative instances of commencement of a valid business relationship appears in *Anderson v. Weldy*, 930 N.E.2d 1244 (Ind. Ct. App. 2010) and *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 92 (Ind. Ct. App. 2009).  In *Columbus Medical Services*, the Indiana Court of Appeals concurred with and adopted the trial court's finding that as a qualified responder to the State's Request for Proposals ("RFP"), having submitted a proposal, the plaintiff had a valid business relationship with which the defendant had interfered.  The Court found two separate, distinct valid business relationships, the one contemplated by the submission of the

RFP which had been harmed by the defendant's submission of an RFP containing materially false representations:

> Liberty was the incumbent provider of staffing services at [the Hospital], which was one form of business relationship. Liberty also was a qualified respondent to the State's RFP ..., which thereby created a second (and related) business relationship between Liberty and the State. . . . This submission by Columbus of a bid containing substantial false representations, knowingly made, constituted interference by Columbus with the two distinct business relationships then existing between Liberty and the State regarding [the Hospital].

*Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 92 (Ind. Ct. App. 2009). At the time the defendant submitted its false bid, the State had received the plaintiff's RFP but not yet commenced contract negotiations with any party or entered an agreement to employ the plaintiff under its new RFP bid. The Indiana appellate court still agreed to the existence of a valid business relationship.

Though Indiana courts have recognized there is some flexibility as to when a valid business relationship exists, it has strongly indicated the existence of at least one definitive event–the decision by a consumer to do business with a particular vendor.

In *Anderson*, the Indiana Court of Appeals defined commencement of a valid business relationship in the negative–because the consumer "had not yet decided who was going to do the work for her," no valid business relationship had been established. Thus, by the Indiana court's reasoning, when a consumer <u>has</u> decided upon a vendor, a valid business relationship exists.

The allegations of the complaint assert the Defendants intentionally interfered with business relationships between themselves and Plaintiffs' customers, relationships formed and "perfected" as valid business relationships under Indiana authority, binding and persuasive. The consumers had

-4-

decided to do business with them and had announced this intention to do business with a Plaintiff to a Defendant whereupon the Defendants engaged in behavior violative of Indiana statute.

Federal courts interpreting and applying Indiana law on this point have further recognized that a valid business relationship can exists absent specific transactions or even articulated intent. In *Patriot Homes, Inc. v. Forest River Hous., Inc*., No. 3:05-CV-471-AS, 2007 WL 2782272 (N.D. Ind. Sept. 20, 2007), the District Court denied summary judgment to a defendant who had interfered with the plaintiff's relationship with the public at large.

The protection afforded businesses from improper interference is not narrowly construed as the Report indicates but broad, intended to protect relationships of established nature, as exemplified by an existing contract, but also those of prospective nature. Otherwise, there would be no need for the clear distinction of two separate torts, tortious interference with contract and tortious interference with business relationships. There would be only one.

Indiana law has long recognized a cause of action for unjustified interference in a prospective business relationship. *Martin v. Platt*, 179 Ind. App. 688, 690, 386 N.E.2d 1026, 1027 (1979)("Indiana has long recognized that an action will lie for an unjustifiable interference with the contractual and prospectively advantageous business relationship one enjoys with another."). See also *Kiyose v. Trustees of Indiana Univ*., 166 Ind. App. 34, 43, 333 N.E.2d 886, 890-91 (1975).

This was clearly recognized by the Northern District of Indiana in applying Indiana tortious interference law:

> It is indisputable that, as a general proposition, the wrongful interference with the performance of the formation of a contract constitutes a tort for which damages may be recoverable. See 86 C.J.S. § 43 (1954). "In addition, the common law has long held that the reasonable expectancy of a prospective contract is a property right to be

protected from wrongful interference in the same sense as an existing contract is protected."

*Mother Goose Nursery Sch., Inc. v. Sendak*, 591 F. Supp. 897, 912 (N.D. Ind. 1984)(rev'd on other grounds).

Not only is the distinction clear and unambiguous under Indiana law, the Indiana courts and federal courts applying Indiana law have relied upon the Restatement (Second) of Torts § 766B to define the purpose of the tortious interference with business relations cause of action.  Comment c to that section provides:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts Interference with the exercise by potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.

See, e.g., *Columbus Med. Servs. Org., LLC,* 911 N.E.2d at 92, and *Mother Goose*, 591 F.Supp. at 912.

The Report and Recommendation requires for this tort a certainty that the law of Indiana does not require.  As noted, the facts of the complaint do not allege mere wishful thinking on the part of the Plaintiffs but the verbalized decision of consumers to do business with their respective shops. There are no facts or circumstances set forth in the complaint from which the Court can reasonably infer consumers uniformly lied about their choice of body shop to the Defendants or they had no intention of following through with their stated intentions without the Defendants' interference. The

Court can only decide at this stage of litigation that such express decisions and announcement of decisions is speculative if it decides to simply disbelieve the allegations of the complaint, which it is not permitted to do.

   3. The Report and Recommendation errs by requiring pleading specificity beyond that required under Rule 8 of the Federal Rules of Civil Procedure

The Report and Recommendation further errs in its argument the amended complaint by imposing a heightened pleading standard of specificity.  In fact, the Report does so explicitly: "But these allegations are general and do not include the who, what, when, where, or how for any time this occurred."  Se Report and Recommendation, pg. 13.

This is the language of the heightened pleading specificity required under Rule 9(b).  *Joseph v. Bernstein*, 612 F. App'x 551, 556 (11th Cir. 2015)("Joseph's allegations of fraud plainly failed to "plead the who, what, when, where, and how of the allegedly false statements."),  *U.S. ex rel. Seal 1 v. Lockheed Martin Corp.*, 429 F. App'x 818, 821 (11th Cir. 2011)(We agree that Olsen's allegations related to the time period of 1999 through 2004 and possibly to the present lack the requisite particularity of the who, what, where, when and how of either any false statements or presentment for payment of a fraudulent claim . . ."),  *Mitchell v. Beverly Enterprises, Inc.*, 248 F. App'x 73, 74 (11th Cir. 2007)(("affirming district court's dismissal of complaint that "provided the 'who,' 'what,' 'where,' 'when,' and 'how' of improper practices, but ... failed to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government", *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007)("the plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."), *Hill v. Morehouse Med. Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug.

15, 2003)("To that end, the "plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them").

As has been repeatedly pointed out, "the pleading standard Rule 8 announces does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Only causes of action set forth in Rule 9(b) must be pled with the particularity of detailed "who, what, when, where or how" facts.  The Eleventh Circuit has clearly drawn a circle around this form of pleading to those causes to which Rule 9(b) applies.

Rule 9(b) does not apply to a claim of tortious interference.  By dismissing the claim based in significant part on the Plaintiffs' purported failure to allege the "who, what, when, where or how" of Defendants' tortious interference, the Report plainly and explicitly applies the Rule 9(b) standard to Plaintiffs' non-Rule 9(b) claim, which constitutes plain error.

Further, the Report's findings are not only inconsistent with actual pleading standards, it inaccurately characterizes the content of the complaint.  The complaint admittedly does not assert facts with the specificity of, "On January 12, 2010, at 4:14 p.m., John Smith told State Farm Representative Harry Adjuster he was taking his car to be fixed at ABC Body Shop and Adjuster told Mr. Smith at 4:16 p.m. that he was not allowed to take his car to ABC.  This statement was made by telephone."

As the tortious interference claim does not fall under the pleading requirements of Rule 9(b), the Plaintiffs are absolutely and unequivocally <u>not</u> required to plead with that degree of specificity. See *Id.*  However, the complaint does provide factual allegations of the who, what, where, when and how of the Defendants' tortious interference.

-8-

| | |
|---|---|
| The complaint sets out the who: | Representatives of the Defendants, and consumers who identified a Plaintiff as their choice of repair shop |
| The complaint sets out the what and the how: | After being notified a consumer had chosen to do business with a Plaintiff, representatives of the Defendants conveyed false, slanderous, and misleading statements of fact to consumers about the quality, ethics and cost of Plaintiffs' services, misrepresented the extent of their respective payment obligations, their authority to compel use of cost-compliant shops upon consumers and exerted various forms of economic coercion upon consumers who articulated the decision to do business with Plaintiffs. The SAC further set out detailed examples of the false, slanderous and misleading statements, explained how they are false, misleading and slanderous, and provided detailed examples of statements exerting economic coercion upon consumers. |
| The complaint sets out the where and the when: | The Defendants' intentional interference commenced upon being notified by a consumer of the selection of a Plaintiff to perform auto repairs, which most often takes place by telephone |

Furthermore, the complaint did provide specific examples of steering which included the consumer's name, the specific insurer, the specific statements or actions taken by the insurer to interfere with the consumer's decision of repair shop.  The examples even included an instance of State Farm towing away a consumer's vehicle and repeatedly refusing to abide by the consumer's repeated direction that his car be fixed at Plaintiff Brothers Paint and Body.  (SAC ¶¶ 315-320.)

Having previously and repeatedly acknowledged they are not required to meet the specificity pleading of Rule 9, the Report continues to rely upon the purported absence of specific detail to dismiss the claim.  Furthermore, in pleadings in companion cases, the plaintiffs did specifically name each and every defendant in connection with each and every factual allegation and was chastised by

the court and threatened with sanctions.  This places the Plaintiffs in an intolerable and incurable position, with no way to plead.

The Plaintiffs are permitted to aver factual allegations based upon their personal knowledge and belief.  The court is not free to disregard those facts, nor may it dismiss this claim because it chooses not to believe those facts. .  "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, (1989). See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009),  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 428 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015).

The Report further fails to apprehend the significance of the failed attempts to interfere.  The reality is the Plaintiffs can only know of the Defendants' interference when a customer reports it to them.  Only the Defendants have full knowledge of the extent and success of their interference.  As that information is solely within the possession of the Defendants, the Court may not dismiss the claim for failing to provide specific facts.  Not even complaints subject to the particularity pleading of Rule 9 may be dismissed on this ground under these circumstances.  See, e.g., *Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)(Courts "must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud.")

Plaintiffs must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control.  *Id.* at 646, *Hekker v. Ideon Grp., Inc.*, No. 95-681-CIV-J-16, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996).

-10-

That is precisely what Plaintiffs have done.  The failed attempts to interfere are specific examples of which the Plaintiffs have been made aware; they support the allegation that Defendants are engaging in the actions described in the complaint; they show the charges against the Defendants are not baseless.  While they will not accrue damages for the Plaintiffs, the failed attempts to interfere are just as important as the successful ones, the only difference between the two at the pleading stage is that Plaintiffs more often know the specifics of the failed attempts than they do the successful ones.  The specifics of the successful ones are held within the possession and control of the Defendants.

The Report compounds this pleading requirement error by engaging in purportedly logical conclusions that are not, in fact, logical at all as well as unambiguous refusal to apply the correct standard of analysis.

The Report disregards the assertions of the complaint that full knowledge of the extent of the Defendants' tortious interference lies within sole possession and control of the Defendants themselves.  The Report found this "not credible."  "Before tortious interference with a business relationship could occur, there had to be a valid relationship between a Plaintiff and a consumer that would have resulted in a contract, but for the interference.  Consequently, Plaintiffs must know whose business they lost.  They may not always know why they lost the business, but each Plaintiff should be able to identify at least one specific relationship with which each Defendants successfully interfered."

The trial court is prohibited from making credibility determinations of the facts asserted in the complaint.  *Cohan v. Bonita Resort & Club Ass'n, Inc.*, No. 2:15-CV-61-FTM-38DNF, 2015 WL 2093565, at *5 (M.D. Fla. May 5, 2015).  "*Twombly* does not require a court at the

motion-to-dismiss stage to consider whether the factual allegations are probably true. <u>We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be.</u> *Iqbal*, 556 U.S. at 696.

The Supreme Court has been extremely clear under what circumstances a court may disregard factual allegations of a complaint based upon lack of credibility: "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Id.* (internal punctuation omitted.)

By clearly stating the basis of its recommendation to dismiss upon the subjective determination of credibility of the facts asserted, the Report plainly admits to doing that which is prohibited–making credibility determinations of facts which are not impossible, which do not defy reality as we know it, and drawing factual credibility determinations which favor the Defendants, instead of the Plaintiffs..

The factual allegations of the complaint clearly do not fall within the realm of fantasy; the Report and Recommendation just decided not to believe them.  With utmost respect, that is not a decision within the trial court's discretion.

Further, the Report's logic is fatally flawed.  While superficially recognizing that Plaintiffs' may not always know why they lost a customer, the Report concludes the Plaintiffs should nonetheless be able to identify "at least one specific relationship with which each Defendant successfully interfered."  Respectfully, the former precludes the details demanded by the latter.  If

a Plaintiff does not know why it lost a customer, it cannot identify that specific customer in the complaint.

Further, the complaint <u>does</u> set forth specific instances, which the Report wholly disregarded as insufficient.  This leaves the Plaintiffs with no way to plead–they cannot make general averments substantiated by specific examples of the claimed behavior, and specific instances of interference are disregarded for failing to meet a pleading standard which does not apply.

The Plaintiffs are permitted to make averments based not on specifically articulated instances of interference, but upon information and belief and their personal knowledge:

> [T]he *Twombly* plausibility standard does not prevent a party from pleading facts based "upon information and belief" where the belief stems from factual information that makes the inference of culpability plausible. See *Iqbal,* 556 U.S. at 678  ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") The *Twombly* Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556.  Pleading facts based upon information and belief when those facts are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible" is therefore permissible.

*Universal City Studios v. Nissim Corp.*, No. 14-81344-CIV-KAM, 2015 WL 1124704, at *3 (S.D. Fla. Mar. 12, 2015).

The Plaintiffs pled exactly as they are permitted to plead–upon their personal knowledge, information and belief.  They provided specific fact instances which support their personal knowledge, information and belief that Defendants are engaging in the tortious conduct of which they stand accused, thereby making their assertions plausible.  As was previously stated, the full

extent of Defendants' interference is only known by the Defendants themselves. Having asserted more than sufficient specific instances to support the complaints averments, the Plaintiffs are entitled to pursue discovery on this claim.

The Report makes the additional logical and legal error by finding that if the Plaintiffs do not know with certainty the facts of the interference and lost customer then there was no valid business relationship formed. That a consumer did not inform a Plaintiff of the reason why it was taking business elsewhere does not negate the formation of a valid business relationship; it merely means the consumer did not inform the Plaintiff of the Defendants' interference as the cause of the business relationship not being completed.

By the Report's reasoning, there would never be a valid business relationship formed so long as the interfering defendant was successful in keeping the reason for customer defection a secret from the plaintiff. Respectfully, there is nothing in Indiana law to support the conclusion reached in the Report.

4. The Report again incorrectly construes the allegations of the complaint to dismiss upon permissible "group pleading"

As above, the Report finds the allegations of the complaint not credible that each and every Defendant engages in identical forms of tortious interference. Again, as above, that is not a credibility determination within the court's discretion to make.

The complaint alleges that each and every Defendant has engaged in identical forms of tortious interference and provided specific examples of that interference. When the complaint so alleges, it is permissible for the Plaintiffs to utilize the shorthand term "the Defendants." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 860 (11th Cir. 2014), *Crespo v. Coldwell Banker Mortgage*,

599 F. App'x 868, 872 (11th Cir. 2014), *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997).

See also, *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL 1467726,

at *5 (S.D. Fla. Mar. 30, 2015),  *Sprint Sols., Inc. v. Cell Xchange, Inc.*, No. 8:14-CV-00233-T-27,

2015 WL 1001272, at *2 (M.D. Fla. Mar. 6, 2015), *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp.

3d 1224, 1227 (S.D. Fla. 2014).

The practice only runs afoul of the applicable pleading standard where it results in a

complaint that fails to give each defendant notice of the claims against it. *Sprint Solutions, Inc. v.

Fils-Amie*, 44 F. Supp. 3d at 1227.

The Report does not find the complaint fails to give each defendant notice of the claims

against them.  Not even the Defendants argue they do not know what are the claims against them.

The extensive discussion of the tortious interference claim by Defendants in their multiple motions

to dismiss shows they do have a complete understanding of the claims against them and when such

is shown, the complaint may not be dismissed on this ground.  *Toback v. GNC Holdings, Inc.*, No.

13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013).  Certainly the detail with which

the Report sets out the allegations of tortious interference make clear it understands the allegations

against the Defendants, having devoted multiple pages to discussing those allegations.  It simply

chooses not to believe them, which it is not permitted to do.

Finally, the Report's last justification for dismissing the complaint rests upon the conclusion

that group pleading is impermissible under Indiana tortious interference law.  "The SAC also runs

afoul of Indiana law which defines tortious interference with a business relationship in terms of

specific, individual relationships between a plaintiff and third party in which the defendant

interferes." For support of this, the Report cites *Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553, 556 (S.D. Ind. 1988).

However, no such conclusion appears in *Economation* regarding the elements of an Indiana tortious interference claim. On the contrary, *Economation* was dismissed upon summary judgment, after discovery had concluded. At that point, not at the pleading stage, summary judgment was granted as the plaintiff still could not identify any customers with whom the defendant interfered. Furthermore, the tortious interference alleged in *Economation* was predicated upon a purported breach of fiduciary duty owed the plaintiffs by the defendants. No such fiduciary duty is here alleged.

The Plaintiffs here have not engaged in discovery. They have not failed to meet their burden of proof as the Report inappropriately transfers the burden of proof to the complaint. A complaint is not required to set forth evidence, prove the case or otherwise provide proof of the plaintiff's right to recovery, as the Eleventh Circuit has previously recognized in *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). A "complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim. It need only 'allege facts sufficient to state elements' of the claim." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012).

Courts have been repeatedly warned against applying summary-judgment style analysis to motions to dismiss. *Twombly* and *Iqbal* impose only a plausibility standard and courts must scrupulously avoid applying the "preponderance of the evidence standard" to a motion to dismiss. *SD3, LLC,* 801 F.3d at 425. The vast difference between Rule 12 and Rule 56 analysis remains intact. *Id.*

-16-

The Report's reliance upon summary judgment factual findings to support its dismissal clearly abrogates the duties imposed upon the court in analyzing a motion to dismiss and erroneously increases the pleading requirements of the Plaintiffs.

## QUANTUM MERUIT

The Report recommends dismissal of Plaintiffs' quantum meruit claim upon grounds which are not fully clear.  At times it refers to previous recommendations without stating whether it is adopting the same reasoning here.  Plaintiffs therefore address each contention of the Report out of an abundance of caution.

1. Existence of a contract between Plaintiffs and Defendants

The Report indicates that because of the alleged existence of an express contract between the Plaintiffs and the Defendants, the equitable claim of quantum meruit is unavailable.  The Report states the Plaintiffs alleged the existence of a contract.

This is factually inaccurate.  Nowhere in the complaint do the Plaintiffs allege the existence of a contract, any contract, between themselves, respectively, and any Defendant.  On the contrary, the complaint explicitly states no contract exists.  (SAC, ¶ 145.)

The only parties who have asserted there exists a contract are various Defendants in various motions to dismiss.  As no such factual assertion exists on the face of the complaint, a conclusion that an enforceable contract exists between the parties can only be determined by facts outside the complaint and therefore constitutes an affirmative defense.  *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007).  See also, *Green v. Amjak Enterprises, Inc.,* No. 2:06CV264FTM29SPC, 2006 WL 2265455, at *2 (M.D. Fla. Aug. 8, 2006)

Defendants unquestionably bear the burden of proof for affirmative defenses they may choose to assert. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 93 (2008) and *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990).

This is the case under Indiana law, as well; the existence of an enforceable contract is a question of state law, determined by analysis of the contents of the purported contract. See, *Conwell v. Gray Loon Outdoor Mktg. Group*, 906 N.E.2d 805, 813 (Ind. 2009).

Here, the Plaintiffs affirmative denied the existence of any contract between themselves, respectively and any Defendant. Having so asserted, the court is required to await the pleading and production of such a contract by any Defendant who chooses to assert such an affirmative defense. The Report errs by suggesting dismissal of the claim on this ground is permissible.

2. Reasonable value of services rendered

The Report suggest the quantum meruit claim must be dismissed because Plaintiffs had no reasonable expectation of payment as Defendants had habitually refused to make full payment in the past, finding, "Plaintiffs seemingly fail to understand that the determination of reasonable value compensation only becomes an issue for the trier of fact after Plaintiffs satisfy the three requirements to establish a quantum meruit claim."

Respectfully, this conclusion is wrong, premised upon a refusal to accept as true the factual allegations of the complaint. The Report indicates that because the Defendants paid all they intended to pay, then Plaintiffs had no reasonable expectation of payment and therefore the complaint fails to allege facts for this element of the claim. However, as Plaintiffs asserted, they are entitled to full payment for work performed, not merely what Defendants choose to pay. This is consistent with Indiana law.

-18-

Indiana law recognizes just such fact scenarios to allow quantum meruit for <u>full</u> payment after a defendant made partial payment, or tendered what it chose to pay and refused further payment and Indiana law has so recognized and enforced quantum meruit claims under these circumstances consistently for nearly a century. *Mueller v. Karns*, 873 N.E.2d 652, 654 (Ind. Ct. App. 2007), *Bd. of Pub. Works of City of Hammond, Ind. v. L. Cosby Bernard & Co.,* 435 N.E.2d 575, 578 (Ind. Ct. App. 1982), *Jones v. Servel, Inc.*, 135 Ind. App. 171, 184, 186 N.E.2d 689, 695 (1962), *Cent. Dredging Co. v. F.G. Proudfoot Co.*, 87 Ind. App. 171, 158 N.E. 229, 231 (1927).

Thus, the Report's conclusion that some payment extinguishes the reasonable expectation of payment is contradicted by extensive Indiana authority.

3.  <u>Request for repair services by Defendants</u>

The Report indicates the quantum meruit claim should be dismissed because Plaintiffs failed to allege they conferred a benefit upon the Defendants. "The SAC does not allege that repairs are done at Defendants' request, that Defendants have a duty to repair the vehicles, or that repairing vehicles saves Defendants from expense or loss."

Respectfully, each of these grounds for dismissal for lack of benefit is erroneous.

Indiana law does not impose as an element of a quantum meruit claim that a request for services originate expressly from the party sought to be held liable. On the contrary, Indiana law recognizes that a request for services may be implied. *Woodruff v. Indiana Family & Soc. Servs. Admin*., 964 N.E.2d 784, 791 (Ind. 2012). And Indiana law has a flexible approach to this matter: "Put another way, "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment

-19-

would be unjust." *Woodruff v. Indiana Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012).

The complaint avers the Defendants communicated regularly and routinely directly with the Plaintiff regarding repairs, often required Plaintiff to withhold services until their employee or hired representative examined the vehicles and approved them, asserted they had authority to control the manner of repairs and parts used in the repair process through explicit direction to the Plaintiff and retained absolute control over compensation, including making payment directly to the Plaintiff for its services. By retaining this degree of involvement as well as explicitly conditioning payment for supplemental repairs upon approval by each Defendant insurer, each Defendant insurer did impliedly engage Plaintiffs' services.

4. <u>Conferral of a benefit</u>

Relying upon Florida law, the Report concludes no benefit was conferred upon the Defendants by the Plaintiffs' rendering services to consumers for whom Defendants were obligated to make repair cost payment. Respectfully, this is contrary to <u>Indiana</u> law.

Indiana has repeatedly recognized and adopted the *Restatement of Restitution § 1* in defining and discussing quantum meruit. See, e.g., *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009), *Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005), *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).

The *Restatement of Restitution § 1* holds a person confers a benefit upon another if he, among other things, performs services beneficial to or at the request of the other, <u>satisfies a debt or a duty of the other</u>, or in any way adds to the other's security or advantage. He confers a benefit not only

where he adds to the property of another, but also where he saves the other from expense or loss. <u>The word "benefit," therefore, denotes any form of advantage.</u>

The complaint avers the Defendants are obligated to pay the cost of repairing vehicles for their insureds and claimants.  Plaintiffs repair services allow the Defendants to execute this duty. In each individual instance, the performance of repairs protected the Defendants from suit by insureds and/or claimants, as well as performance of Defendants duties and obligations to insureds and claimants.

If the Defendants wish to challenge these assertions, they may do so by way of an answer. The court, however, may not disregard or disbelieve the factual allegations of the complaint, particularly where, as here, the authority relied upon by the State of Indiana for this state law claim defines benefit far more broadly than this court.

5. <u>Repair of vehicles by the Defendants</u>

Plaintiffs are not quite certain whether the Report intends to convey the notion that the insurers themselves will perform repairs or have an obligation to see that vehicles are repaired in general.  Respectfully, the facts alleged in the complaint negate either interpretation.

As set forth in the complaint, the Defendants are obligated to pay the cost of repairs to the vehicles of their insureds and claimants.  If the Defendants wish to refute this assertion, to assert they have no duty to pay the cost of repairs, they may do so by way of an answer and they must bear the burden of proof for this affirmative defense.  As the Defendants made partial payment (as set forth in the complaint) and as Defendants have never denied they have an obligation to pay for repairs performed for their respective insureds and claimants, the Report is making an unwarranted negative

factual conclusion in breach of its duty to analyze the allegations of the complaint in favor of the Plaintiffs.

6. <u>Group Pleading</u>

As the law regarding permitting use of "the Defendants" is set forth at length above, Plaintiffs adopt the same for purposes of their quantum meruit claim and reassert all grounds set forth above.

Respectfully submitted, this the 11th day of March, 2016.

**INDIANA AUTOBODY ASSOCIATION, INC., ET AL**

**BY:**       /s/ Allison P. Fry
         John Arthur Eaves, Jr.
         Allison P. Fry


         Attorneys for the Plaintiff

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:     601.355.7961
Facsimile:     601.355.0530
**allison@eaveslaw.com**


### <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss has been served electronically via the ECF system all counsel of record registered to receive note.


/s/ Allison P. Fry

.