**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

INDIANA AUTOBODY ASSOCIATION, INC., *et al.*,

          Plaintiffs,

v.

STATE FARM MUTUAL AUTO INSURANCE COMPANY, *et al.*,

          Defendants.

**Case No. 6:14-CV-06001-ORL-31TBS**

**MDL Case No. 6:15-MD-2557-GAP-TBS**

**GEICO GENERAL INSURANCE COMPANY AND GEICO INDEMNITY COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION**

In his February 26, 2016 Report and Recommendation ("R&R"), Judge Smith correctly determined that each Plaintiffs' tortious interference with business relations and *quantum meruit* claims against GEICO General Insurance Company and GEICO Indemnity Company (collectively "GEICO") must be dismissed with prejudice for failure to state claims upon which relief could be granted. *See* Doc. 175. Plaintiffs' Objection provides no basis for the Court to reject any of Judge Smith's recommendations. *See* Doc. 177.

Plaintiffs' Objection cites no alleged facts to support their tortious interference claims against GEICO. As Judge Smith concluded, Plaintiffs did not identify a single customer lost due to interference by GEICO, failed to identify a valid business relationship with which GEICO interfered and failed to identify illegal conduct GEICO engaged in as part of any interference. Plaintiffs' Objection does not identify allegations that cure these deficiencies. Plaintiffs insist the Court permit their claim to proceed based on speculation that GEICO interfered with some unidentified business relation based on their general allegations, group pleading and allegations of times when other Defendants allegedly did not interfere with their business relations. Judge Smith was correct to recommend dismissal of these claims with prejudice.

Plaintiffs' Objection also identifies no alleged facts that plausibly suggest they had a reasonable expectation of payment, failing to establish *prima facie* elements of their *quantum meruit* claims. Plaintiffs also fail to identify how they conferred a benefit on GEICO and their *quantum meruit* claims suffer from the same group pleading that renders their tortious interference claims implausible and improperly pled. Judge Smith was correct to recommend dismissal of Plaintiffs' *quantum meruit* claims with prejudice on each of these grounds. The R&R also discusses the prohibition against a *quantum meruit* claim where there is a valid express contract, but does not clearly recommend dismissal on this basis. Plaintiffs' SAC alleges some Plaintiffs have DRP agreements with some Defendants.[1] Plaintiffs' *quantum meruit* claims should also be dismissed because they have alleged the existence of contracts. For any, and all,

---

[1] GEICO does not have DRPs as alleged and defined in the SAC, but, as Plaintiffs have repeatedly stated, the SAC's DRP allegations must be accepted as true for purposes of GEICO's Motion to Dismiss.

-1-

of these reasons, the Court should adopt Judge Smith's recommendation and dismiss the *quantum meruit* claims against GEICO with prejudice.

For the reasons stated in Judge Smith's R&R, in GEICO's Motions to Dismiss and below, GEICO requests that the Court adopt Judge Smith's R&R. *See* Docs. 175, 155.

### I. JUDGE SMITH CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS AGAINST GEICO

Judge Smith first recommended dismissal of Plaintiffs' tortious interference claims against GEICO because "[t]here are no allegations [in the SAC] that any Plaintiff lost a single customer due to the actions of [GEICO]." R&R at 10. Plaintiffs did not object to this recommendation and the Court should adopt it and dismiss Plaintiffs' claims against GEICO with prejudice. Judge Smith also recommended dismissal of Plaintiffs' tortious interference claims against GEICO on three alternative grounds: (1) Plaintiffs' did not identify valid business relationships (R&R at 11-12); (2) Plaintiffs did not identify what illegal act GEICO engaged in when it allegedly interfered; (3) Plaintiffs' SAC is an impermissible group pleading (R&R at 15-18). Judge Smith's recommendations are each correct and should be adopted by the Court. Besides Judge Smith's recommended bases to dismiss Plaintiffs' tortious interference claims against GEICO with prejudice, the Court should also dismiss the claims because the SAC does not allege lack of justification.

#### A. Plaintiffs Did Not Object To Judge Smith's Recommendation That Their Tortious Interference Claims Be Dismissed Because They Did Not Allege Any Plaintiff Suffered Damage As A Result Of Interference By GEICO

The primary basis on which Judge Smith recommended dismissal of Plaintiffs' tortious interference claims against GEICO is because "[t]here are no allegations [in the SAC] that any Plaintiff lost a single customer due to the actions of [GEICO]." R&R at 10. As Judge Smith correctly observed, "Indiana law requires actual damage resulting from the interference . . . ." *Id.* (citing *Economation, Inc. v. Automated Conveyor Systems, Inc.*, 694 F. Supp. 553, 556 (S.D. Ind. 1988). Plaintiffs did not object to this recommendation. *See* Objection at 1-17 (addressing alternative bases for dismissal recommended in the R&R).

The only place where Plaintiffs' Objection discussed damage is in discussing so-called "specific examples" of "failed attempts to interfere," which they concede "will not accrue damages for the Plaintiffs." *See* Objection at 10-11. To the extent the "specific examples" say anything about any Defendant tortuously interfering with any Plaintiff (they do not), they say even less about GEICO because none of the examples of failed attempts to interfere mention GEICO. *See* Objection at 9 (citing SAC ¶¶ 315-20). Plaintiffs appear to ask the Court to speculate that some other Defendant's non-commission of a tort plausibly suggests GEICO committed a tort related to some other, unidentified, transaction with an unidentified customer at an unidentified time. That is guessing.

Plaintiffs cannot identify a single occasion where GEICO caused any Plaintiff damage by interfering with a single Plaintiff's business relationship. Plaintiffs' claim that some occasions must exist but they just do not know about them is baseless. *See* Objection at 10. The Court has repeatedly stated that Plaintiffs "must provide enough factual allegations to raise a right to relief above the speculative level." Doc. 176 at 3 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Doc. 176 at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (holding that Plaintiffs must allege more than "the mere possibility of misconduct"). Plaintiffs' tortious interference claims against GEICO are grounded in speculation. The Court should adopt Judge Smith's unobjected-to recommendation and dismiss Plaintiffs' tortious interference claims against GEICO with prejudice.

### B. Judge Smith Correctly Held That Plaintiffs Did Not Allege The Existence Of Valid Business Relationships

Plaintiffs' tortious interference claims against GEICO had to allege facts plausibly suggesting the existence of a "valid business relationship." *Economation*, 694 F. Supp. at 556. Judge Smith correctly stated that a valid business relationship under Indiana law requires a "sufficiently well-defined expectation that a contract would be created before the defendant interfered" and that "'bald assertions of possible business opportunities'" are insufficient. R&R at 11 (quoting *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. App. 1992).

Judge Smith also correctly concluded that Plaintiffs' claims against GEICO are "nothing more than bald assertions of possible business opportunities." *Id.*

Relying on *Columbus Medical Services Organization, LLC v. Liberty Healthcare Corp.*, *Anderson v. Weldy* and *Patriot Homes, Inc. v. Forest River Housing Inc.*, Plaintiffs argue that Indiana recognizes a valid business relationship has formed when one party to the "relationship" has expressed an interest in doing business with the other party to the "relationship" even if the parties have never communicated and one party does not know the other exists. Objection at 3-7. Common sense and the cases Plaintiffs cited do not support their argument.

The existence of a "valid business relationship" was not at issue in *Columbus*, and *Columbus* does not support Plaintiffs' position. *See* 911 N.E. 2d 85 (Ind. Ct. App. 2009). According to the trial court's findings, Liberty was providing services to a third party, the third party had requested bids for service, Liberty had submitted a bid to the third party, and the bid would have been accepted but for Columbus' interference. *Id.* at 92-93. Not only did the parties have an ongoing business relationship, but both parties had taken steps that would have expanded that relationship if Columbus had not unlawfully interfered.

*Anderson*[2] did not "define[] the commencement of a valid business relationship in the negative," as Plaintiffs claim. *See* Objection at 4. Instead, *Anderson* demonstrates that more is needed than the parties knowing the other exists and one party expressing an interest in working with the other party. The *Anderson* court held that no valid business relationship existed where one party had bid for work but the other party had not yet decided who was going to do the work. 930 N.E.2d 1244 (Table), No.30A01-0906-CV-271, 2010 WL 3019973 at *4 (Ind. Ct. App. 2010). *Anderson* indicates that a valid business relationship requires more than a possibility that a relationship will form at some time in the future.

*Patriot Homes* cannot be read as denying summary judgment "to a defendant who had interfered with the plaintiff's relationship with the public at large," as Plaintiffs claim. Objection at 5. *Patriot Homes* states:

---

[2] *Anderson* is unpublished and cannot be cited in Indiana courts. Ind. Appellate Rule 65(D).

> In fact, what Sterling was doing, was reproducing Patriot's products from Patriot's manuals previously stolen by Patriot's former employees prior to leaving the employment of Patriot, then recasting Patriot's products as its own at discounted prices to Patriot's customers.

No. 3:05-CV-471 AS, 2007 WL 2782272, at *7 (N.D. Ind. Sept. 20, 2007). Patriot's customers would have been easy to identify because Patriot had a list of customers or because they purchased Patriot's product from Sterling instead of Patriot. This was not some undefined population, but a very specific population that only could have purchased products from one party had it not been for the illegal interference of another party.

Plaintiffs identify no case recognizing a valid business relationship where the parties have never communicated and one party does not know the other exists. One cannot imagine how one would define such a scenario as a "relationship." Plaintiffs' tortious interference claims rely on bald assertions of possible opportunities and pure speculation. Plaintiffs' Objection identifies no single customer who asked about doing business with any Plaintiff, much less the formation of a valid business relationship with which GEICO allegedly interfered. Judge Smith was correct to recommend dismissal with prejudice on this ground. R&R at 11-12.[3]

### C. **Judge Smith Correctly Held That Plaintiffs Did Not Allege GEICO's Alleged Interference Involved Illegal Conduct**

To state their tortious interference claims, Plaintiffs must also allege facts plausibly suggesting GEICO's alleged interference was illegal. *Economation*, 694 F. Supp. at 556. Judge Smith held that Plaintiffs failed to do so because they did not identify what law GEICO allegedly violated or the conduct that allegedly violated the law. R&R at 12-13. Plaintiffs' Objection provides no clarity.

Plaintiffs' Objection quotes the SAC purportedly citing a statute,[4] but the SAC talks about examples from statutes that enumerate over 45 unfair or deceptive acts (Indiana Code § 27-4-1-3 and -4.5). *See* Objection at 1-2. As Judge Smith found, nowhere in the SAC or even in

---

[3] Judge Smith also could have recommended dismissal of Plaintiffs' tortious interference claims because Plaintiffs failed to allege facts plausibly suggesting GEICO knew of or intentionally interfered with a relationship. *See Economation*, 694 F. Supp. at 556 (S.D. Ind. 1988). Even Plaintiffs do not know about any relationship.

[4] SAC ¶ 483 refers to "Sec. 4 (a)(1)(E)(16)," but no statute with this number exists in the Indiana Code.

Plaintiffs' Objection do Plaintiffs identify which of these sections GEICO allegedly violated. *See* R&R at 13.

Judge Smith was also correct that Plaintiffs do not identify any alleged facts plausibly suggesting GEICO violated a statute. *See id*. Plaintiffs take issue with Judge Smith's statement that their allegations are too general and "do not include the who, what, when, where or how for any time this occurred," but Judge Smith's comment is on point. *See id.*; Objection at 7-9 (calling this a heightened pleading standard). As GEICO argued in its Motion to Dismiss, Plaintiffs fail to set forth any factual allegations supporting their vague, conclusory contention that GEICO allegedly violated Indiana's statutes. *See* Doc. 155 at 19. Plaintiffs' Objection also says nothing about GEICO. The general allegations Plaintiffs cited provide no clarification because they do not support their claims. Paragraph 485 of the SAC alleges omission of procedures and utilization of substandard parts, which could only occur (assuming it did occur, which is not supported by any facts alleged in the SAC) in relationships with which GEICO did not interfere. *See* Objection at 2 (citing SAC ¶ 485). This cannot be illegal conduct supporting Plaintiff's tortious interference claim because the two claims are unrelated.

In insisting they have provided the who, what, where, when and how of the interference, however, Plaintiffs make different general allegations that also do not plausibly suggest GEICO engaged in illegal conduct in interfering with a relationship. *See* Objection at 8-9. Plaintiffs claim "the what and the how" of the interference is Defendants' conveyance of "false, slanderous, and misleading statements of fact to consumers." *Id.* at 9. Judge Smith correctly held, however, that under Indiana law, defamation does not constitute illegal conduct for purposes of tortious interference. R&R at 13-14 (citing *Melton v. Ousley*, 925 N.E.2d 430, 436 (Ind. Ct. App. 2010)). Plaintiffs did not object to this holding.[5]

---

[5] Moreover, if this really is the basis of their tortious interference claim, Plaintiffs must plead this claim with particularity pursuant to Federal Rule of Civil Procedure 9(b), but have not done so with respect to GEICO. Even though tortious interference is not labeled "fraud," if it rested on alleged misrepresentations, it would "sound in fraud" bringing it within the requirements of Rule 9(b). *See Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x. 882, 884 (11th Cir. 2014) (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064–65 (11th Cir. 2007) (holding Rule 9(b) applies to claims that "sound in fraud"); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) (holding that Rule 9(b) applies to a tortious interference claim based on alleged fraudulent conduct); *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1320 (S.D. Fla. 2013) (applying

In recommending dismissal for failure to allege facts plausibly suggesting GEICO engaged in illegal conduct in interfering with valid business relationships, Judge Smith did not "require[] pleading specificity beyond that required under Rule 8." *See* Objection at 7. He correctly held that Plaintiffs did not allege facts that inform GEICO or the Court of any violation of law by GEICO and the Court should adopt his recommendation.[6]

### D. Judge Smith Correctly Held That Plaintiffs' Group-Pled Allegations Are Insufficient To State A Claim

GEICO's Motion to Dismiss argued that Plaintiffs' SAC does not indicate which of its 495 paragraphs allegedly support Plaintiffs' tortious interference claims against GEICO and continues to rely on group pleading. Doc. 155 at 18. The SAC includes at least fifty paragraphs pertaining to alleged "steering" (SAC ¶¶ 310-363), but only mentions ***one*** general allegation about GEICO, *id.* ¶ 313. As GEICO argued, Plaintiffs' shotgun and group pleading make it impossible for GEICO to know precisely what it is defending against and render their claims implausible. Doc. 155 at 18. Plaintiffs continue to allege that all Defendants interfered with all Plaintiffs, without identifying which Defendant allegedly interfered with which Plaintiff, which is implausible. *See* SAC ¶¶ 476-87. Plaintiffs' group pleading is particularly egregious here, where one of the Plaintiffs with which Defendants allegedly collectively interfered (the Indiana Auto Body Association) is not even a repair shop. SAC ¶¶ 59-60.

Plaintiffs also misunderstand this Court's condemnation of group pleading in the tortious interference context. *See* Objection at 9-10. After the Plaintiffs in *A & E Auto Body, Inc. v. 21st*

---

Rule 9(b) to allegations of fraudulent conduct underlying tortious interference claim); *Marks v. Struble*, 347 F. Supp. 2d 136, 147 (D.N.J. 2004) (same). Despite Plaintiffs' claim that the Court has "repeatedly acknowledged they are not required to meeting [sic] the specificity pleading of Rule 9," the Court has not held this and has recognized that prior *dicta* discussing the applicability of Rule 9(b) is not definitive or binding. *See* Objection *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, 120 F. Supp. 3d 1352, 1368 (M.D. Fla. 2015) ("With respect to the allegedly objectionable *dicta,* the Defendants' concerns are noted. However, as the language at issue did not affect the result of the June 3 Report, the Court finds no reason to determine whether those concerns are warranted. Should a future opinion turn on these points, the Defendants may reassert their objections.").

[6] Plaintiffs also incorrectly claim Judge Smith weighed the credibility of the facts asserted in the SAC. *See* Objection at 11-12 (incorrectly asserting Judge Smith disregarded facts as "not credible"). What Judge Smith found "not credible" was Plaintiffs' argument. R&R at 16 ("Plaintiffs argue that their claim should not be dismissed because the evidence to prove it is within the control and possession of Defendants. This is not credible."). Trial courts are clearly permitted to weigh the credibility of the parties' arguments in deciding a motion to dismiss. Plaintiffs' argument about credibility is irrelevant.

*Century Centennial Insurance Company* added the name of every single defendant to every single paragraph in their First Amended Complaint, the Court observed that these changes did not make sense and warned that "[t]he Plaintiffs should insure that their references to 'the Defendants' are, in fact, intended to encompass every single Defendant." Case 6:14-cv-00310-GAP-TBS, Doc. 293 at 6 (January 22, 2015). The Court's condemnation of group pleading merely required each Plaintiff to state plausible claims as to each Defendant the Plaintiff alleges tortuously interfered with a business relationship. Instead of curing this deficiency, Plaintiffs continue to rely almost entirely upon group pleading, which makes it impossible for GEICO to know the factual basis of the claims against it. Plaintiffs' collective conclusory allegations remain implausible and are not supported by any facts in the SAC.

### E. Judge Smith Should Have Also Recommended Dismissal Because The SAC Does Not Allege Facts Plausibly Suggesting Any Interference Was Without Justification

In Indiana, a lack of justifiable cause is established through allegations showing "the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Melton*, 925 N.E.2d at 441. The R&R concluded the SAC alleges lack of justification by alleging that "steering is pointless since Defendants pay the same for the repairs regardless of who performs them . . . [s]o Plaintiffs complain, the only reason Defendants steer consumers is to punish Plaintiffs." R&R at 15 (citing SAC ¶ 327). The allegation relied upon by the R&R is implausible.

Plaintiffs' SAC alleges the purpose of Defendants' alleged steering is to "substantially increas[e] their own profits by steering customers away from Plaintiffs' business [sic] to body shops which comply with the Defendants' fixed prices." SAC ¶ 81. Plaintiffs specifically allege the purpose of the generically alleged tortious interference is:

> to punish the specific Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceilings the Defendants were enforcing upon them, and to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum price ceilings unilaterally imposed by the Defendants.

-8-

SAC ¶ 478; *see also* SAC ¶ 310 (describing "'steering' as the term used to describe the practice of insurers of coercing or otherwise convincing a consumer to withhold patronage from a disfavored repair shop for failing to comply with fixed prices"); SAC ¶ 313 (alleging GEICO "internal documents" tie what the SAC incorrectly alleges is steering to "increased company profits and increased profit-sharing bonuses for employees"); SAC ¶ 323 (alleging the Defendants steer "to preferred shop [sic] that would comply with fixed prices and parts procurement ceilings"); *cf.* SAC ¶¶ 326-27, 479 (implausibly alleging that the Defendants do not have a financial interest in directing business away from body shops who consistently insist on overcharging or attempting to overcharge their customers).

This Court "need not accept factual claims that are internally inconsistent" for purposes of a motion to dismiss. *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998). Plaintiffs' allegation that the only reason for the purported steering is to punish Plaintiffs is contradicted by the SAC's direct allegation that the reason for the alleged steering is to save money by directing customers to shops that will charge less for the same repairs. The Court should not adopt the R&R's recommendation to the contrary and should dismiss Plaintiffs' tortious interference claims for failing to plausibly allege a lack of justification.

### F. Judge Smith's Recommendation To Dismiss Each Plaintiffs' Tortious Interference Claims Against GEICO Was Correct

Plaintiffs' SAC is a transparent attempt to engage in a wild and expensive fishing expedition into every interaction GEICO (and every other Defendant) has had with any claimant or insured (presumably, although it is unclear, in Indiana) to determine if that interaction might contain something supporting Plaintiffs' broad, non-specific claims. Plaintiffs' general pleading is not permitted by Indiana law, Rule 8 or *Iqbal/Twombly* and Judge Smith was correct to recommend dismissal of these generally alleged claims.

### II. JUDGE SMITH CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' *QUANTUM MERUIT* CLAIMS AGAINST GEICO

Judge Smith recommended dismissal of Plaintiffs' *quantum meruit* claim because (1) Plaintiffs did not allege facts plausibly suggesting a reasonable expectation of additional

-9-

payment from GEICO (R&R at 20-21); (2) Plaintiffs did not confer a benefit on GEICO (R&R at 22-23); and (3) the *quantum meruit* claim is group pled (R&R at 23). The R&R also discussed the prohibition against a *quantum meruit* claim where there is a valid express contract, but did not clearly recommend dismissal on this basis. Because the SAC's factual allegations suggest DRP agreements are contracts, the *quantum meruit* claims should be dismissed on this basis as well.[7]

### A. Judge Smith Correctly Held That Plaintiffs Do Not Allege Facts Plausibly Suggesting They Had A Reasonable Expectation Of Additional Payment

Judge Smith recommended dismissal of Plaintiffs' *quantum meruit* claims because Plaintiffs did not allege facts sufficient to support a plausible claim that Plaintiffs had a reasonable expectation of additional payment. R&R at 21 (citations omitted). As GEICO argued in its Motion to Dismiss, Plaintiffs could not have reasonably expected to be paid more for their services because Plaintiffs agreed to perform the repairs at certain prices and knew that GEICO had always refused to pay more. *See* SAC ¶ 147 ("Defendant insurers compel acceptance of a fixed pricing structure"); ¶ 154 ("Defendants . . . simply refuse to pay more for parts than the cheapest a part can be purchased"); ¶ 160 ("Payment is presented to Plaintiffs on a 'take it or leave it' basis."); ¶ 164 ("[A]ll Defendants require all Plaintiffs to wait to begin repairs until after an agent of the responsible insurer has inspected the damaged vehicle upon threat of refusal to pay for necessary repairs. All estimates prepared by the agent of all Defendants include the statement that the estimate is not an authorization to repair . . . ."); ¶ 169 ("All Defendants assert they will pay no more than the market rate for labor in the market area.").

SAC Paragraph 490 confirms Plaintiffs allege that before they performed each repair, the Defendants preserved their rights and approved the work. SAC ¶ 490 ("Defendants reserved the unilateral right to give permission for each Plaintiff to commence work until such time and place as they deemed appropriate. . . . the Defendants asserted they were entitled to certain rights and privileges in advance of work actually commencing to preserve their own rights."). Where

---

[7] *See* footnote 1.

Plaintiffs mention GEICO, they allege GEICO obtains its own estimate before work is performed. *See* SAC ¶ 313. Judge Smith was correct that the allegations in Plaintiffs' SAC do not plausibly suggest Plaintiffs had a reasonable expectation of payment over the amount GEICO told each Plaintiff it would pay.

Plaintiffs cite no allegations in their SAC plausibly suggesting they had a reasonable expectation of additional payment. *See* Objection at 18-19. Instead, Plaintiffs argue "Indiana law recognizes just such a fact scenarios [sic] to allow quantum meruit for full payment after a defendant made partial payment, or tendered what it chose to pay and refused further payment and Indiana law has so recognized and enforced quantum meruit claims under these circumstances consistently for nearly a century." *See* Objection at 19. This argument misses the point and the cases cited are unhelpful to Plaintiffs.

In *Mueller v. Karns* the plaintiff had not received partial payment. 873 N.E.2d 652, 654-56 (Ind. Ct. App. 2007). The only previous payments discussed were payments the plaintiff had received on past projects. *Id.* at 654. *Mueller* provides no insight into Plaintiffs' claims.

The parties in *Board of Public Works of City of Hammond, Ind. v. L. Cosby Bernard & Co.*, had an agreement for certain architectural services and the defendant paid the plaintiff under that agreement. 435 N.E.2d 575, 576-77 (Ind. Ct. App. 1982). During the project, the scope expanded, but the defendant refused to pay additional amounts for work performed related to the expansion. *Id.* Plaintiffs' allegations here are not analogous. Plaintiffs here allege they agreed to perform certain services knowing what Defendants would pay for those services and now want to be paid more money for the same services. Plaintiffs' Objection confirms their allegations are not analogous by claiming that Defendants "explicitly condition[] payment for supplemental repairs upon approval by each Defendant insurer."[8] Plaintiffs allege that before they perform additional work, Defendants also tell Plaintiffs what they will pay for that work. *See also* SAC ¶ 165 (discussing supplements).

---

[8] This demonstrates the group pleading problem Judge Smith identified. *See* R&R at 23. This appears to claim that if, for example, a Plaintiff sought a supplement from Progressive, Progressive, GEICO and every other Defendant would have to approve it. As with Plaintiffs' other allegations, this is implausible on its face.

The remaining cases Plaintiffs cited involved contracts one party did not fully perform and requests for payment of the reasonable value of the services performed. In *Jones v. Servel, Inc.*, one party died four months into an indefinite term personal services contract. 135 Ind. App. 171, 176-77 (Ind. Ct. App. 1962). The court held that because the death made full performance impossible, but the other party benefited from partial performance, there was no liability under the contract but the person benefited was responsible on an implied promise for the value of the services performed. *Id.* at 182 (quoting *Williams v. Butler*, 105 N.E. 387, 390 (Ind. Ct. App 1914)). In *Central Dredging Co. v. F.G. Proudfoot Co.*, the plaintiff could not complete performance under a contract because of the defendant's non-performance and therefore rescinded the contract and sued to recover the reasonable value of the work performed. 158 N.E. 229, 230 (Ind. App 1927). Plaintiffs here do not claim they partially performed under a contract and want compensation for the value of their partial performance, so these cases are inapposite.

Judge Smith did not conclude that "some payment extinguishes the reasonable expectation of payment" as Plaintiffs' claim. *See* Objection at 19. Rather, the R&R correctly concluded that Plaintiffs did not allege facts plausibly suggesting Plaintiffs had a reasonable expectation of payment for amounts in addition to those already paid. The Court should adopt the R&R's recommendation.

### B. Judge Smith Correctly Held That Plaintiffs Did Not Allege Facts Plausibly Suggesting They Conferred A Benefit On GEICO

Judge Smith also recommended dismissal of Plaintiffs' *quantum meruit* claims because Plaintiffs did not allege facts plausibly suggesting Plaintiffs conferred a benefit on GEICO. R&R at 22-23. Judge Smith correctly concluded that "[a]ccording to the SAC, the only effect a repair has on Defendants is the incurring of an obligation to pay for it. The obligation to pay is not a benefit to Defendants." *Id.* at 23. Plaintiffs' objection on this point is nonsensical. *See* Objection at 19-22.

First, Judge Smith did not state that a request for services is an element of *quantum meruit*. *See* R&R at 24; Objection at 19-20. Rather, in analyzing whether the repairs conferred a

benefit on Defendants, he noted that Defendants did not request the repairs. R&R at 24. Second, it is unclear to what language in the R&R the section titled "Repair of vehicles by Defendants" is objecting. *See* Objection at 21-22.

Finally, Plaintiffs concede Judge Smith's conclusion is correct. *See* Objection at 20-21. According to Plaintiffs, the SAC alleges "the Defendants are obligated to pay the cost of repairing vehicles for their insureds and claimants. Plaintiffs repair services allow the Defendants to execute this duty." *Id.* at 21. As Judge Smith said, Plaintiffs perform services and Defendants incur an obligation to pay for the services. *See* R&R at 23.[9] Plaintiffs do not explain how incurring a debt is a "form of advantage." *See* Objection at 21-22.

### C. Judge Smith Correctly Held That Plaintiffs' *Quantum Meruit* Claim Is An Improper Group Pleading

As with their tortious interference claims, Plaintiffs' *quantum meruit* claims are improperly group pled. The SAC does not provide Defendants notice of who allegedly owes which Plaintiff for what, and appears to indicate every Defendant owes every Plaintiff for each repair every Plaintiff performed. *See* SAC ¶ 489 (alleging Plaintiffs performed valuable services for which all Defendants must pay). Similarly, Plaintiffs allege generally that some Plaintiffs have DRP agreements with some Defendants, but do not distinguish which ones have agreements or with which Defendants. *See* SAC ¶ 135.

### D. Plaintiffs' *Quantum Meruit* Claims Should Be Dismissed Because They Allege The Existence Of Contracts

Judge Smith recognized the existence of contracts precludes a *quantum meruit* claim. R&R at 19 & n.4 (citation omitted). Plaintiffs do not dispute this rule of law, but dispute they alleged the existence of contracts. *See* Objection at 17-18. It is unclear if the R&R meant to recommend dismissal of Plaintiffs' *quantum meruit* claims because contracts are alleged, but if it did not, it should have. *See* R&R at 19.

According to the SAC, in exchange for certain concessions, Defendants with DRPs list

---

[9] Plaintiffs' role in the imposition of an obligation to pay for repairs is merely incidental. The insurance contract obligates the Defendants to pay the costs of repair. From the contract's perspective, it does not matter who performs the repairs or if the repairs are even performed.

-13-

the body shop as a preferred provider.[10] SAC ¶ 137. The SAC alleges that over the years, the deal has gotten worse for body shops, but there still is an exchange. *See* SAC ¶¶ 138-39. The SAC also alleges that Plaintiffs' DRP agreements have "terms," although some of the terms are "consistently disregarded." SAC ¶ 140. The SAC even alleges that Defendants take remedial steps if a Plaintiff breaches the agreement by ceasing to list the shop as a preferred provider. SAC ¶ 142. Even though Plaintiffs expressly allege each party receives something from DRP agreements, they conclude DRP agreements do not include consideration. SAC ¶ 143. Even though Plaintiffs expressly allege Defendants take action when a Plaintiff breaches a DRP agreement, Plaintiffs conclude Defendants do not treat DRPs as enforceable contracts. SAC ¶ 144. Plaintiffs' factual allegations contradict their conlcusory allegation that they "do not allege any contract exists between themselves and any Defendant." *See* Objection at 17 (citing SAC ¶ 145). Because Plaintiffs' allege the existence of contracts, they cannot maintain *quantum meruit* claims.[11] For example, to the extent Plaintiffs allege State Farm improperly requires them to use salvaged crash parts, they allege they have a remedy under State Farm's Select Service DRP. SAC ¶ 140. Under Indiana law, Plaintiffs cannot maintain a *quantum meruit* claim where a contract covers the same subject. R&R at 19 & n.4. Plaintiffs' *quantum meruit* claims should be dismissed on this ground as well.

### E. Judge Smith's Recommendation To Dismiss Each Plaintiffs' *Quantum Meruit* Claim Against GEICO Was Correct

As with their tortious interference claims, Plaintiffs' general pleading is not permitted by Indiana law, Rule 8 or *Iqbal/Twombly* and Judge Smith was correct to recommend dismissal of these generally alleged claims. Plaintiffs have not corrected fundamental deficiencies this Court has repeatedly identified with their claims. The Court should adopt Judge Smith's recommendation and dismiss Plaintiffs' *quantum meruit* claims with prejudice.

---

[10] As previously stated, GEICO does not have DRPs as alleged and defined in the SAC, but, as Plaintiffs have repeatedly stated, the SAC's DRP allegations must be accepted as true for purposes of GEICO's Motion to Dismiss. *See also supra* footnote 1.

[11] To the extent this is an affirmative defense, the Court may rely on it because the facts appear in the SAC. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.").

the body shop as a preferred provider.[10] SAC ¶ 137. The SAC alleges that over the years, the deal has gotten worse for body shops, but there still is an exchange. *See* SAC ¶¶ 138-39. The SAC also alleges that Plaintiffs' DRP agreements have "terms," although some of the terms are "consistently disregarded." SAC ¶ 140. The SAC even alleges that Defendants take remedial steps if a Plaintiff breaches the agreement by ceasing to list the shop as a preferred provider. SAC ¶ 142. Even though Plaintiffs expressly allege each party receives something from DRP agreements, they conclude DRP agreements do not include consideration. SAC ¶ 143. Even though Plaintiffs expressly allege Defendants take action when a Plaintiff breaches a DRP agreement, Plaintiffs conclude Defendants do not treat DRPs as enforceable contracts. SAC ¶ 144. Plaintiffs' factual allegations contradict their conlcusory allegation that they "do not allege any contract exists between themselves and any Defendant." *See* Objection at 17 (citing SAC ¶ 145). Because Plaintiffs' allege the existence of contracts, they cannot maintain *quantum meruit* claims.[11] For example, to the extent Plaintiffs allege State Farm improperly requires them to use salvaged crash parts, they allege they have a remedy under State Farm's Select Service DRP. SAC ¶ 140. Under Indiana law, Plaintiffs cannot maintain a *quantum meruit* claim where a contract covers the same subject. R&R at 19 & n.4. Plaintiffs' *quantum meruit* claims should be dismissed on this ground as well.

### E. Judge Smith's Recommendation To Dismiss Each Plaintiffs' *Quantum Meruit* Claim Against GEICO Was Correct

As with their tortious interference claims, Plaintiffs' general pleading is not permitted by Indiana law, Rule 8 or *Iqbal/Twombly* and Judge Smith was correct to recommend dismissal of these generally alleged claims. Plaintiffs have not corrected fundamental deficiencies this Court has repeatedly identified with their claims. The Court should adopt Judge Smith's recommendation and dismiss Plaintiffs' *quantum meruit* claims with prejudice.

---

[10] As previously stated, GEICO does not have DRPs as alleged and defined in the SAC, but, as Plaintiffs have repeatedly stated, the SAC's DRP allegations must be accepted as true for purposes of GEICO's Motion to Dismiss. *See also supra* footnote 1.

[11] To the extent this is an affirmative defense, the Court may rely on it because the facts appear in the SAC. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.").

DATED this 31st day of March, 2016.

                                                   LEWIS ROCA ROTHGERBER CHRISTIE LLP

                                                   By: */s/ Dan. W. Goldfine*
                                                       Dan W. Goldfine
                                                       Joshua Grabel
                                                       Jamie L. Halavais
                                                       Ian M. Fischer
                                                       201 E. Washington Street, Suite 1200
                                                       Phoenix, Arizona  85004
                                                       Telephone: 602-262-5392
                                                       Facsimile:  602-262-5747
                                                       Email: dgoldfine@lrrc.com
                                                                    jgrabel@lrrc.com
                                                                    jhalavais@lrrc.com
                                                                    ifischer@lrrc.com

                                                       Attorneys for Defendants GEICO General Insurance Company and GEICO Indemnity Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

           */s/ Dan W. Goldfine*
           Dan W. Goldfine